UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                                   Case No. 07-C-491

**APPROXIMATELY $2,758.00 IN
UNITED STATES CURRENCY,**

        **Defendant,**

**JAMES A. PENHALLEGON,**

        **Claimant.**

---

### DECISION AND ORDER FOLLOWING COURT TRIAL

---

On May 29, 2007, the United States of America filed a verified complaint for civil forfeiture in rem against the defendant property. Following James A. Penhallegon's ("Penhallegon") failure to respond to notice of this action, the United States moved for the entry of default judgment, which the Clerk entered on July 23, 2007. On July 30, 2007, Penhallegon filed a brief in opposition to the United States' motion for default, which this court subsequently construed as a claim to the defendant property. Thus, the court ordered Penhallegon to respond to the complaint, which he did on September 27, 2007.

This matter proceeded to a court trial, which occurred on May 28, 2008. The government appeared by Assistant United States Attorney Lisa A. Wesley and claimant Penhallegon appeared pro se. The government called three City of Kenosha police officers. The claimant called no witnesses.

**FINDINGS OF FACT**

The following summary constitutes the court's findings of fact pursuant to Rule 52(a) Fed.R.Civ.P. The facts relating to the seizure of the defendant property are uncomplicated and essentially undisputed. On September 15, 2006, City of Kenosha Police Sergeant David Molinaro ("Molinaro"), shift commander for the police department's street crime unit, observed Penhallegon driving a blue Corvette. Penhallegon was previously under investigation for drug trafficking due to anonymous citizen complaints and a large amount of stop-and-go traffic at his residence. As part of that investigation, officers identified the Corvette Penhallegon was driving and learned that its license registration was expired.

Molinaro contacted other officers and relayed his observations so other officers could stop the vehicle. Molinaro did not want to personally stop the vehicle because he was operating an undercover car that had red and blue emergency lights only on its visor. Two other officers, one of whom was Detective David Alfredson ("Alfredson") who also testified, saw Penhallegon's vehicle stopped in an alley. Alfredson engaged his vehicle's lights, exited his squad and approached Penhallegon on foot. As he did, he observed that Penhallegon had his hand on the gear shift. He asked Penhallegon for his driver's license and told him to put the vehicle in park and turn it off. Penhallegon asked, "Why?" at which point Penhallegon rapidly accelerated in reverse. He reached speeds of approximately 25-30 miles per hour in reverse, and at the end of the alley Penhallegon nearly struck Molinaro's vehicle as he arrived at the scene to assist the other officers. Alfredson and his partner got into their squad car to give chase. Alfredson denies ever drawing his firearm during this confrontation and Molinaro, who testified that he had his car windows down, denied hearing any shots fired.

A brief vehicle pursuit ensued with Penhallegon traveling at speeds estimated as being up to 90 miles per hour through residential neighborhoods and traveling in oncoming lanes. The pursuit

ended when Penhallegon lost control of his vehicle going over a rise, went airborne, landed with such force that sparks flew from the vehicle's undercarriage, and spun out knocking down a traffic sign in the process.

Penhallegon ran from his car, but was chased and apprehended by Molinaro a short distance away. During this brief foot chase, Molinaro saw Penhallegon pull a shiny object from his pocket and throw it to the ground. After Penhallegon was in handcuffs, Molinaro recovered the object he observed Penhallegon discard, which turned out to be a plastic bag containing 5.66 grams of marijuana. A search of Penhallegon revealed 12.21 grams of crack cocaine from his right front pants pocket, 21.6 grams of crack cocaine from his right front shirt pocket, and the defendant property, $2,758.00 from his pants pocket.

Subsequently, Molinaro retraced the path of the vehicle pursuit and recovered a loaded semiautomatic handgun that was traced as having been sold to Penhallegon's wife, and a tin containing five rocks of crack cocaine weighing a total of 5.8 grams. Molinaro did not have the vehicle in constant sight during the pursuit and he did not see Penhallegon discard these items from the vehicle. In total, officers recovered approximately 50 grams of crack cocaine, which in Molinaro's training and experience would have a street value of between $1,500 and $1,800.

Following his arrest, Detective John Peterson ("Peterson"), who testified as the government's third witness, questioned Penhallegon at the Kenosha Police Department and Penhallegon stated that he threw the tin containing crack cocaine from his car during the pursuit.

After Penhallegon's release on bond from charges stemming from the September 15, 2006 incident, Kenosha police officers again placed Penhallegon under surveillance. On January 2, 2007, Penhallegon was observed with one female and two males in Penhallegon's driveway. Penhallegon was observed apparently concealing something in his shirt and then handing this concealed object to the female. Penhallegon then left the house in a red Camaro with the female.

A traffic stop was conducted on the Camaro and crack cocaine was again recovered from Penhallegon. Also recovered from his pocket was a digital scale that had cocaine residue on it and a butterfly knife, which is illegal to possess in Wisconsin. In light of this evidence, a search warrant was obtained for Penhallegon's residence and gun boxes as well as a manual for a pistol that was the same make as the one recovered following the September 15, 2006 incident were recovered.

Penhallegon presented no witnesses, but stated that he had previously asked that Terry Law and Rick Nelson be produced. These requests, filed prior to trial (Docket Nos. 28 and 31), contained no indication as to what these witnesses would testify about at trial. Therefore, the court permitted Penhallegon to make an offer of proof. Terry Law ("Law") is currently an inmate in the Wisconsin Prison System. Penhallegon stated that if Law had been called as a witness, he would have testified that he lived above the bar nearby the location of Penhallegon's September 15, 2006, arrest and observed a police officer with a brown bag say "We got it. We got him."

In regard to Rick Nelsen ("Nelsen"), according to Penhallegon, Nelson was to meet Penhallegon at 8:30 AM on September 15, 2006, to collect rent for storage at a building. Penhallegon said Nelson was out of state and there was no way to reach him.

Finally, the parties entered into three stipulations. First, the parties agreed that the suspected controlled substances recovered were in fact crack cocaine and marijuana. Second, the parties stipulated that Penhallegon filed a citizen's complaint with the Kenosha Police Department alleging that an officer discharged his weapon on September 15, 2006. Third, the parties stipulated that Penhallegon was convicted in 1986 in Missouri for sales of marijuana and was sentenced to a 10 year term of imprisonment.

The criminal charges resulting from these two incidents remain pending in state court. See Kenosha County Circuit Court case numbers 2006CF001002 and 2007CF000014, available at http://wcca.wicourts.gov.

**CONCLUSIONS OF LAW**

The defendant property is subject to forfeiture if the government is able to demonstrate that it was used or intended to be used in exchange for controlled substances, or represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, et. seq. 21 U.S.C. § 881(a)(6).

> Civil forfeiture standards are now subject to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983(c)(1). CAFRA heightens the government's evidentiary burden in civil forfeitures--the government must demonstrate by a preponderance of the evidence that the property sought is subject to forfeiture. See id. ("In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property . . . the burden of proof is on the Government to establish, by a preponderance of the evidence, that property is subject to forfeiture[.]"). Furthermore, § 983(c)(3) provides that "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." Id.

United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670.00), 403 F.3d 448, 454 (7th Cir. 2005). When determining whether the government has met its burden, the court must evaluate the totality of the circumstances. See id. at 467.

Based upon the totality of the circumstances, the court concludes that the government has established by a preponderance of the evidence that the defendant property was used or intended to be used in exchange for controlled substances, or represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, and therefore the court shall order the defendant property forfeited.

Although the government's witnesses all acknowledged during cross-examination that they never saw Penhallegon sell or purchase controlled substances, the circumstantial evidence nonetheless supports the conclusion that he was engaged in the sale and distribution of controlled substances. The overall quantity and street value of controlled substances that Penhallegon possessed was consistent with sales rather than personal use. Further, many of the crack cocaine

rocks were subdivided into 3.5 gram quantities, which is a quantity in which crack cocaine is frequently sold. Additionally, the government has established that Penhallegon illegally possessed a handgun, a common tool of the drug trade, see, e.g., United States v. $ 22,991.00, More or Less, in United States Currency, 227 F. Supp. 2d 1220, 1237 (S.D. Ala. 2002) (citing cases); see also, United States v. 1990 Toyota 4Runner, 9 F.3d 651, 653 (7th Cir. 1993), along with the controlled substances and the defendant currency.

The government has also established that Penhallegon continued his involvement in drug sales following his initial arrest and while he was on bond for those charges. Penhallegon was again arrested with quantities of crack cocaine that were consistent with distribution rather than personal use and an illegal weapon. Further, police officers recovered from Penhallegon a digital scale, another common tool of the drug trade, see, e.g., United States v. $111,980.00 in U.S. Currency, 660 F. Supp. 247, 249 (E.D. Wis. 1987), that contained cocaine residue. This subsequent evidence is probative of the fact that Penhallegon was involved in drug sales on September 15, 2006.

Additionally, there are the facts that Penhallegon was previously convicted of the sale of controlled substances, for which he received a lengthy prison sentence, see United States v. All Assets & Equip. of W. Side Bldg. Corp., 58 F.3d 1181, 1189 (7th Cir. 1995), and that Penhallegon presented no evidence of any legitimate source of income to account for the significant amount of currency recovered from him on September 15, 2006, see United States v. Edwards, 885 F.2d 377, 390 (7th Cir. 1989). See United States v. Carrell, 252 F.3d 1193, 1201 (11th Cir. 2001).

The fact that the defendant currency was possessed at the same time that the claimant possessed significant quantities of controlled substances and a handgun is strong evidence of the requisite nexus between the defendant property and the sale of controlled substances. See United States v. United States Currency, 2006 U.S. Dist. LEXIS 73527, 21 (E.D. Wis. 2006) (citing United

States v. 84,615 in United States Currency, 379 F.3d 496, 501 (8th Cir. 2004)). Therefore, the court shall order the defendant property forfeited in accordance with 21 U.S.C. § 881(a)(6).

As for the remaining issues regarding the proposed testimony of the two claimant witnesses who were not presented at trial, the court shall not consider the testimony of either witness. As for Terry Law, who is a prisoner in the Wisconsin Prison System and whose presence would have required a writ from the court, the court finds that Penhallegon failed to appropriately notify the court that he sought the court to have Law present for trial. In a document filed by Penhallegon on January 8, 2008, (Docket No. 31), captioned "Discovery," "I am requesting the court to have present an inmate in Wisconsin Dept. of Correction. His name is Terry J. Law. He lived above the arrest scene and will testify as to what happened during my arrest." In this document, Penhallegon then proceeds to outline numerous other requests for discovery for items such as hearing transcripts, photographs, 911 phone calls, and copies of Penhallegon's own phone bills. Penhallegon filed a similar request on January 31, 2008 wherein he requested the disclosure of confidential informants identified in pre-trial disclosures. (Docket No. 33.) In an order dated February 20, 2008, this court stated that ordinary discovery requests are not matters that involve the court. (Docket No. 37.)

At the time of Penhallegon's January 8, 2008 letter, the case was in the discovery phase and a deadline for dispositive motions was set for March 3, 2008. (See Docket No. 26.) At no point following the scheduling of the court trial in this matter did Penhallegon request that Law be produced. Due to the timing and context of Penhallegon's request, the court interpreted Penhallegon's request as a discovery related request that was not properly before the court rather than a request for a writ to secure Law's appearance as a witness at trial. Thus, Penhallegon failed to properly request Law's appearance and the court shall not consider the alleged content of Law's testimony.

Penhallegon also failed to secure the appearance of Rick Nelsen, a witness who Penhallegon alleges would have testified that he was scheduled to meet Penhallegon on the morning of September 15, 2008 to collect rent for a storage building. However, unlike Law, Nelsen was not in custody, and thus it was entirely Penhallegon's responsibility to secure Nelsen's appearance for trial. Although Penhallegon implied that he lacked sufficient resources and time to contact Nelsen, the court finds these reasons insufficient to excuse Penhallegon's failure. Penhallegon has been pushing for this matter to proceed to trial, (see, e.g., Docket Nos. 33, 36.) and thus during this time period he could have made appropriate efforts to ensure he knew how to contact Nelsen once he learned the date this matter would come to trial. Further, the court trial was scheduled on April 2, 2008, thus giving Penhallegon roughly six weeks to contact Nelsen. Finally, Penhallegon did not raise the allegation that he lacked sufficient time to secure Nelsen's appearance until the court said at the close of evidence, when the issue of Nelsen's testimony first raised by Penhallegon, that it would not consider the letter Penhallegon submitted, (Docket No. 31 at 5), purportedly from Nelsen absent Nelsen's testimony.

However, even if this court were to find it appropriate to consider the facts that Penhallegon alleges Law and Nelsen would have testified to, this additional evidence would not alter the court's ultimate conclusion. Accepting as true that an officer at the scene of Penhallegon's September 15, 2006 arrest had a brown bag and said, "We got it. We got him," does not undermine the evidence that supports the conclusion that Penhallegon possessed controlled substances in quantities consistent with sales, a firearm, as well as the defendant currency, on September 15, 2006.

Further, accepting as true that Penhallegon was intending to meet Nelsen to pay rent on a storage building on the morning of September 15, 2006 does not undermine the conclusion that the defendant property was the proceeds of drug sales. Simply because Penhallegon may have been intending to use the defendant property for a legitimate purpose rather than the purchase of

additional controlled substances or to directly facilitate drug trafficking, does not render the defendant property non-forfeitable. The evidence supports the conclusion that the defendant property was the proceeds of illegal drug sales and thus is subject to forfeiture.

NOW, THEREFORE,

**IT IS HEREBY ORDERED** that the defendant United States currency in the amount of approximately $ 2,758.00 be and hereby is **forfeited** to the United States of America pursuant to 21 U.S.C. § 881(a)(6), and that all right, title, and interest James A. Penhallegon claims to said property be similarly forfeited. The Clerk shall enter judgment accordingly.

SO ORDERED.

Dated at Milwaukee, Wisconsin this 9th day of June, 2008.

                                                          s/AARON E. GOODSTEIN
                                                          U.S. Magistrate Judge